Good morning. Good morning, Your Honors. May it please the Court, my name is Megan Hoffman and I am here on behalf of Appellant Christian Walker. Christian Walker has presented evidence now that establishes it is more likely than not that no reasonable and properly instructed jury would have convicted him of attempt to murder with use of a deadly weapon. The new evidence presented at the evidentiary hearing and further bolstered by the record in this case establishes that Christian is actually innocent under Nevada law. The evidence established that it was Johnny Walker's plan alone to lure the victim away from the home. It was the evidence shows that it was Johnny Walker's plan alone to intimidate or scare Mr. Demas. And the evidence establishes that it was Johnny Walker's decision alone to carry a gun that night. In fact, Christian had no idea that Johnny was carrying a gun. Well, you say the evidence establishes, but that that would assume, though, that Johnny Walker, in fact, was telling the truth. And, of course, the district court found otherwise. So I guess I don't see why the case doesn't end right there unless you're going to argue that somehow the district court's credibility determination is clearly erroneous. That seems like a real steep climb here, especially — especially given the victim's testimony that there were, what, two additional shots fired as they were running? Your Honor, there are some discrepancies, and we established in the — or we argued in both the opening and the reply briefs that we don't believe that the district court's order here or the credibility determination is subject to any kind of deference. As the Court noted in House v. Bell, it has to be a holistic determination in reviewing all of the evidence. And in this particular case, I think the most glaring error that the lower court made was in the remand order that this Court issued in ordering the district court to give an evidentiary hearing. This Court instructed the lower court that there are already some indications of reliability, namely that Johnny Walker had come forward before he'd even been tried. And in this particular instance, the district court does not consider that at all. And, in fact, it makes a determination that Johnny — it finds that — I never find that there was a letter. There was never an affidavit. But that's clearly belied by the record here. The record clearly establishes and determines that not only did Christian's attorney know that Johnny intended to offer exculpatory evidence in Christian's favor, that Johnny's own attorneys agreed with that interpretation and that representation. And all of that came out before Johnny was — went to trial. And the district court makes no acknowledgment of that or considers it in any basis in his findings that Johnny's statements weren't reliable. Instead, he holds it against Johnny that the letter was never produced and says, I just find there was no such thing. Roberts. Okay. Okay. But how about addressing the fact that the victim says that there were two additional shots fired as they ran? That is directly — that contradicts in the most fundamental way Johnny Walker's entire account of how this went down. Why wouldn't that alone give the district court grounds for saying, you know what, I watched this person testify, I observed their demeanor, all of the other signals, and I just don't buy the guy's story, notwithstanding the fact that maybe he had volunteered early on to — to testify for — is it his cousin? Yes, the first cousin, yes. Their cousins, yeah. Your Honor, it's true that there was testimony at the trial that there were two additional shots heard. No one indicated that they saw those shots being heard. Everyone was running from the scene. Johnny didn't say one way or the other. He didn't testify that he didn't make those additional two shots. He just testified that his interpretation — or that his version of events on how David Demas was shot was consistent with how David Demas testified. In addition to that, there was no testimony offered at the trial on behalf of the State that ever there were any other — excuse me — there were ever any other bullets found at the scene. There's no really additional information to, you know, to prove or deny whether or not those two shots were fired. And certainly that's something that the jury would be able to consider here. But I think that the district court's primary — its main reason was, I don't believe that Johnny ever came forward. And that evidence is simply not supported by the record. There was other indications here where the district court also doesn't believe that Johnny presented this 1997 letter or affidavit and attributed it to saying that Mr. Lake said he prepared that letter. Mr. Lake never said that he prepared the 1997 affidavit. It was the 2002 determination. The district court got that wrong. Johnny here has — has presented — or Kristen, excuse me, has presented evidence that Johnny was the shooter and that it was Johnny's entire plan to go forward. And under House v. Bell, it's not whether or not the evidence is admissible. It's not whether or not the jury — it's not whether or not it's admissible at this point. It has to be a holistic determination that if this evidence was presented to the jury, would they have found Kristen not to be guilty. And in this case, that is what we have. Certainly, there could be questioning in front of the jury as to whether or not there were two additional bullets. And I think that counsel could ask, well, why weren't those ever recovered? Did the police even, you know, kind of search the scene? But in this particular instance, there was no evidence presented at all that Johnny was the shooter and the lone perpetrator and — and, you know, legal genius behind this plan. Roberts, can I ask you this? You — you fought me on the notion that the district court's credibility determination here is reviewed for, you know, whatever, clear error or something. If you're wrong about that, because I think you are, actually, if you're wrong about that, do you concede that you're not able to overcome that — that kind of deference, given the — I don't, given that the — the biggest indicator of reliability here was that Johnny presented this information before he went to trial. And the district court refuses to acknowledge or consider that in any instance in its order. And I think that certainly — and, you know, one of the things that House says is that it's — that this doesn't turn on small discrepancies in the record. And it doesn't — you know, the determination of whether or not this evidence is available and should be presented to the jury doesn't present on these — these small differences, these factual determinations about, you know, factual assessments. Roberts. But can I just ask this? Because I, of course, was on the first panel. And what you're telling me, it seems like, is that we screwed up because what we should have done is just determined as a matter of law that Johnny Walker was credible enough to open the gateway. Right? And that was not — I can just tell you that was not my thinking the first go-round. My thinking was the district court had erred because it basically said — I think we had a line of cases that said even if you're presented with affidavits or the like, you can just say, you know what, this is inherently reliable. I don't even need to hear or see this person testify to know that they're not telling the truth. All we said was there's no way you can make that kind of determination on this record precisely because there was evidence that he'd come forward first. So, of course, district court, you're going to need to bring these people in, make some credibility assessment, and then tell us whether the gateway opens. And it seems like that's what the district court did here. You obviously disagree with the credibility determination. But once that's made, I don't really know what more we're supposed to do. Well, I think in this particular instance, Your Honor, I don't disagree that we should have had a hearing. And I think we did have a hearing here. I think — But wait. But what's the purpose of the hearing? Because all you're saying is that the district court on this record could not make an adverse determination because there was evidence that he had come forward first. Well, we already knew that. That's exactly why you got the hearing in the first place. No, Your Honor. I'm not suggesting that the credibility determination of the district court is never relevant here. I think in House, the Court very clearly indicated that it is certainly something that the Court needs to consider. They said the same thing in McQuiggan. In our — our argument here, though, however, is that at the evidentiary hearing, the Court is required to make a probabilistic determination of all of the evidence of the record. And he didn't do that here. He did not consider all of the evidence in the record in making that credibility determination. And that is what has to be considered. It's not the ultimate — the district court's decision on whether or not this evidence is admissible or whether or not, you know, the likely impact — or he only has to assess the likely impact of the evidence, but it's not to make an independent factual determination about what likely occurred. And that's what we're arguing he did here. It's a — it's a small distinction, but I think it is one here where the district court didn't consider all of the evidence that was put before it to make — or that lent a dish of reliability to Johnny's testimony. And in this particular case — Well, of some significance to the district court is the fact that Johnny maintained his innocence all the way through his trial, and, therefore, that would bear on the consideration of whether it would be more likely than not that a jury would convict. Certainly, Your Honor. Oh, I'm sorry. How do you deal with that? Your Honor, in this particular instance, Johnny didn't maintain his innocence all the way throughout. At the very beginning, even his own lawyers admit that Johnny was going to present evidence in Christian's favor, that if he presented the evidence, it would be more likely than not that Christian would not be convicted. Right. But I'm talking about Johnny's trial, not Christian's. Right. So at Christian — at Johnny's trial, Johnny did not testify. Right. He's entitled to present a defense. And Johnny's statement ultimately in the PSI report that I didn't commit this offense, if you read the next section, he also says, but I wasn't found guilty of attempt murder, so at least that's something. That's consistent with what he's been saying all along. In our case, it's consistent with what he said in 2002 and 2014, I believe the hearing was, that he — Johnny thought this was an — this was an accident. He didn't mean to shoot David Demas. He certainly meant to scare him. He admitted that. He certainly meant to lure him to a place where he was not going to be safe. He admitted that. But he never meant to shoot him. And so in Johnny's mind — That wasn't his defense at trial, was it? No, but those were his attorney's words and not his own. And certainly, the ABA guidelines and precedent from this Court and from the United States Supreme Court have said that certain tactics taken at trial are the attorney's provision alone, and those were those — you know, those arguments. The arguments that were made during Johnny's closing arguments were statements made by the jury. Also, I would note that in the opening statements, the State conceded that Johnny proceeded on the theory that this was an accident. So it is consistent throughout the trial that Johnny was proceeding on the idea that this was an accident or that it certainly wasn't what it was charged. And I see I'm — Thank you, counsel. We'll give you a couple minutes for a vote. Thank you, Your Honors. You're from the State. May it please the Court, Heidi Stern on behalf of Respondents' Appellees. In this case, Christian Walker is seeking an extraordinary remedy that is rarely met, as this Court has previously noted. In this case, with — even with the new evidence presented, Christian cannot show that every single juror's mind would have been changed given the testimony of Johnny Walker at trial, in combination with everything else. And that is the standard that he has to meet. So with that, I'd like to move on to an issue that was discussed previously, which is the credibility determinations made by the district court. The whole purpose of the district court having the evidentiary hearing was to determine that credibility, something that this court is unable to do. The district court is the one who observed these witnesses and listened to their testimony. And I would note, for the record, that Jones v. Taylor from this court does state that credibility determinations are reviewed for clear error. House v. Bell also does not — it does not set a clear error standard, but it says district courts must be allowed to make credibility determinations. And Larson v. Soto says that if the district court applies the correct standard, which is that you can't change every juror's mind, that the credibility determination should be left alone by this court. So from our perspective, credibility from the district court and its determination that Johnny and Gerald were not credible should end the matter there. But the district court did continue and also made a determination of reliability. The problem with Christian's case with regard to liability is, once you do consider actually all the evidence, Johnny Walker's testimony is irretrievably inconsistent. The only way that Christian can prevail in this case to convince every juror to find him not guilty is by completely disregarding all of the inconsistent statements that Johnny Walker made over time. And those are laid out in our brief, so unless the court wants me to, I won't go into detail. But he certainly contradicted himself numerous times at his sentencing and thereafter. With regard to, let's see, Johnny's plan that was mentioned by counsel, at the evidentiary hearing, Johnny actually said that going to DEMAS in the first place was a coincidence. Well, that directly contradicts the fact that he had a plan that he put into his affidavit. So that's just one example of him being unreliable. And in addition to that, had Johnny testified, so let's say if this Court disagrees that all of this testimony was unreliable and looks at the fact that if Johnny had testified, what would have happened? He would have been impeached with his prior inconsistent statements as well as prior convictions, and at the evidentiary hearing, trial counsel testified to that as well. So given all of the evidence here, there would be at least one juror in this case who would find Christian Walker guilty of attempted murder. And unless this Court has further questions, I will leave it at that. Roberts. Well, I guess I don't think it's quite as open and shut as you presented, because it strikes me that just from the get-go, this case seemed off the odd as one against Christian, because tell me if I'm remembering the facts right. He first tried to get his mother involved by going and confronting the ultimate. It's a little bit more extensive than that. Okay. But I just remember he did get his mother to go and confront the ultimate victim. Then he called the police. Yes. And got the police involved. And then after all that, he's going to enlist his cousin to go and shoot an attempt to kill this person. That just seems like a really odd crime. So that's why, to me, Johnny Walker's testimony has a ring of truth to it, not withstanding the inconsistencies you've flagged. I can see that, Your Honor. And what you're laying out with your recollection is basically the evidence of Christian Walker's specific intent that was presented at his trial. He was so obsessed with this necklace that he went back to Demas' house no fewer than three times. It's a little unclear. It might have even been four times, to confront him about this and sort of vaguely threaten him at various points. And so the jury, hearing, you know, most of the testimony at his trial was this group of friends, all of whom had observed Krishna at different points during the day. And the jury, hearing all that evidence built up about how he was talking about it all day, about how he went back to Demas, all the things he said to Demas, and then culminating in all of a sudden Johnny shows up. You know, it was a very Christian-centered trial. All of a sudden Johnny shows up. He's packing a gun. They lure, I think the jury could easily see this as luring Demas across the street. They, I guess what I'm trying to say is with all of that evidence, Christian was the center of this. And I agree when you look at his case compared to Johnny's case. It seems strange that Johnny wasn't also convicted of attempted murder. That's not what I'm saying at all. Okay. I'm saying it doesn't make any sense for the person in Christian's shoes, after doing all that he did before the crime, to have been the one to plant the idea or not plant the idea, but to come up with the idea and enlist Johnny's assistance to go and murder this person. That just seems completely inconsistent with what general human – I mean, now maybe you're just saying Christian's just not a guy, but that is not the way a typical person who wants to murder someone goes about conducting their business beforehand. That's all I'm saying. Okay. Yeah. And I can't really speak to that. I just know that the sort of trail of evidence at Christian's trial certainly placed him at the center. But it's all circumstantial, isn't it? It is circumstantial. I mean, there's no direct evidence of any conspiracy to – It is circumstantial. And I'll point out for the Court that the Sharma case from the Nevada Supreme Court specifically permits attempted murder or specific intentions. Well, sure. But I think it kind of goes to the question of how strong the case is, how likely the jury would be to convict and so forth. Because to me, I mean, you can leave the mother out of it or the repeated attempts, but when Christian goes to the police and reports stolen property, it just seems unlikely that he would say, okay, now that I've reported it to the police, let's go murder this guy. I don't know that the police responded, to be honest. That was unclear to me from the record as to whether that actually became an incident. I know that they discovered this incident with Dimas as part of their investigation of the murder of Maureen McConaughey. I don't know if I'm pronouncing that correct, but that was a later murder committed by Johnny and Christian, both of whom were convicted of that. So I don't know that the police became involved at that point. I think they probably didn't become involved, but I'm just echoing what Judge Watford said. It's a little odd to go to the police and say, okay, well, now let's just – now that I've established motive, let's – I will point out that it was his mother's idea. Her threat was to go to the police. So maybe that makes a difference. I really can't explain Christian's mindset, but I do know there was an attempt at this attempted murder. Okay. Further questions? Okay. Thank you, counsel. Thank you. We'll give you two minutes for rebuttal. Just very briefly, I just wanted to correct something in the record. Johnny has never testified or stated that he had a plan to go and lure Dimas. The evidence and testimony has always been consistent that they were walking down the street and it was a coincidental reaching. In fact, there was testimony, I believe in Johnny's trial, about whether or not they asked Mr. Dimas, you know, did you plan to meet up? Did it seem like they were waiting for you? And he said, no, we were standing out there and they came by and we started talking. But the jury heard all of this and then – Correct. The jury heard that. Yeah. The jury has never heard, though, that Christian had no intent, he had no knowledge that once they did see Dimas, Johnny said, I didn't like his attitude. I thought he knew more than he was letting on. I decided then and there to scare him to get this information. And I just think it's worth reading something from House v. Bell. In House v. Bell, there was an evidentiary hearing at which the district court had a hearing, listened to testimony, and ultimately found that several of the witnesses' statements were not credible. And in House v. Bell, what the United States Supreme Court said was, here, although the district court attentively managed complex proceedings, carefully reviewed the extended record, and drew certain conclusions about the evidence, the court didn't apply the predictive standard, and et cetera, et cetera. We further are uncertain about the basis for some of the district court's conclusions, a consideration that weakens our reliance on its determinations. And ultimately, the district – the United States Supreme Court concluded that even though the district court had this hearing, made careful review of the record, heard the testimony, and ultimately found that several of the witnesses' statements were not reliable because they'd been offered 10 years after the fact, the Supreme Court ultimately concluded that those – those findings were not supported by the district court, and ordered that Mr. House be given a new – or at least remanded for a consideration of his underlying merits claims. That is what we are arguing here, that this is what happened. There was evidence presented in this record under a probabilistic, holistic determination of all of the evidence that was – that is now before this Court, that was not considered by the district court, or that was belied by the record presented to the district court. And with that, I don't have any questions. Roberts. Thank you, counsel. Thank you both for your arguments today. The case just argued will be submitted for decision. Thank you.
judges: Thomas, Rawlinson, Watford